MARIA L. MEEKER

*v.*

PHILIP MANNIA.

*Filed at Ottawa June 13, 1896.*

PAYMENT—*when payment to one held out as agent is sufficient.* Payment of the sum due upon a contract to purchase real estate, to one who has been held out by the agents of the vendor as their agent authorized to collect moneys for them, will constitute a valid payment upon the contract, although he had been discharged, where no notice of the termination of his agency has been given.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

P. H. BISHOP, for plaintiff in error:

Liebner was never agent for Mrs. Meeker nor in her employ,· nor was he in the employ of Frey & Schlund at the time of the alleged payment of the $218. Mannia paid it (if at all) at his peril. *Peabody* v. *Hoard,* 46 Ill. 242; *Cooley* v. *Willard,* 34 id. 68; *Short* v. *Kieffer,* 142 id. 258.

At the time of such payment Mannia was bound to take notice of the fact that Liebner had no authority to receive the money. *Holmes* v. *Field,* 12 Ill. 424; *Thornton* v. *Boyden,* 31 id. 200;· *Railroad Co.* v. *Fox,* 41 id. 106; *Baxter* v. *Lamont,* 60 id. 237; *Dutcher* v. *Beckwith,* 45 id. 460; *Taylor* v. *Railroad Co.* 74 id. 86; *Thompson* v. *Elliott,* 73 id. 221; *Dozier* v. *Freeman,* 47 Miss. 647; *Reynolds* v. *Ferree,* 86 Ill. 570;

*Abrahams* v. *Weiller*, 87 id. 179; *Boltz* v. *Huston*, 23 Ill. App. 579; *Garrels* v. *Morton*, 26 id. 433; *Higgins* v. *Moore*, 34 N. Y. 417; *Caulter* v. *Portland*, 20 Ore. 469; Mechem on Agency, sec. 276.

Mannia was bound by law to inquire and ascertain whether Liebner still remained in the employ of Frey & Schlund. 1 Am. & Eng. Ency. of Law, 342.

It is not the duty of an employer or principal, when he discharges an employee or special agent, to notify the world of that fact. Mechem on Agency, sec. 225.

J. WARREN PEASE, for defendant in error:

That the wife may act as agent for the husband, when so authorized to do, cannot well be doubted. Mechem on Agency, sec. 62.

Even if it could be said in this case that Mannia had not authorized his wife to pay this money to Frey & Schlund, still it must be admitted that her act in so doing was ratified by Mannia upon his return from work and during the seven months succeeding the payment. 1 Am. & Eng. Ency. of Law, 429, 437; Mechem on Agency, secs. 148, 153.

The rights of third parties who have reasonably and in good faith relied upon the apparent authority of the agent, cannot be prejudiced by secret limitations or restrictions upon it, of which they had no notice. Mechem on Agency, 708; *Diversy* v. *Kellogg*, 44 Ill. 114; *Kingsley* v. *Fitts*, 51 Vt. 414; *Doan* v. *Duncan*, 17 Ill. 272; *Insurance Co.* v. *Pierce*, 75 id. 426; 1 Am. & Eng. Ency. of Law, 410.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a bill for specific performance, brought by Philip Mannia, the defendant in error, against Maria L. Meeker, the plaintiff in error, to compel the conveyance of a certain lot in the city of Chicago. It appears from the evidence in the record that Mrs. Meeker owned a subdivision in a Polish settlement in South Chicago, of

which the lot in question was a part. The most of the inhabitants of the settlement used the Polish language. On October 12, 1889, Mrs. Meeker and Mannia entered into a written contract, by which Mrs. Meeker agreed to convey to Mannia lot 36, in block 5, in Meeker's addition to Hyde Park, if he should first make the payments and perform the covenants on his part mentioned in such contract; and by the contract Mannia agreed to pay Mrs. Meeker $400, in manner as follows: $100 cash in hand, (receipt of which was acknowledged,) and $100 in one year, $100 in two years and $100 in three years, with interest annually at six per cent, and to pay all taxes, etc. By the contract it was agreed that if Mannia should fail to make either of his payments or perform either of his covenants then the contract should be forfeited, at Mrs. Meeker's option, and it was also agreed that the time of payment should be of the essence of the contract.

The only matter in dispute between the parties here is whether the entire amount of purchase money and interest has been paid. It is conceded that $100 was paid upon the execution of the contract. It is also conceded that $18 interest was paid on December 18, 1890, and that on October 10, 1892, defendant in error paid $100 on account of the deferred payments and $6 interest. Mannia claims credit for $200 principal and $18 interest alleged to have been paid to one Liebner on October 17, 1891, and his right to this credit is denied.

There was endorsed on the contract put in evidence by the defendant in error the following:

"Received on the within contract the following sums: Dec. 18, 1890, $18.00 interest.          FREY & SCHLUND.

"Oct. 17, 1891, $18.00 interest, $200.00 principal.
                                        FREY & SCHLUND,
                                          By M. S. LIEBNER."

The payment of $218 on October 17, 1891, it is claimed, was unauthorized, and hence that amount is still due and unpaid. But the circuit court, on the hearing, found that

all the purchase money had been paid, and rendered a decree for the defendant in error, as prayed for in the bill. The payment in dispute was made on the day it bears date, to M. S. Liebner, at the residence of defendant in error. Liebner called at the house and claimed to be acting for and in behalf of Frey & Schlund, who were the agents of the plaintiff in error, and asked for the money, and Mrs. Mannia, who had the money in her possession in the absence of her husband, paid it over to him. Liebner did not, however, pay the money over to Frey & Schlund, but appropriated it to his own use. At the time the money in question was paid, Frey & Schlund were the agents of plaintiff in error, and had been her agents for some time. Frey testified that "in 1891 Frey & Schlund had some property of Maria L. Meeker to handle and sell. We sold some of it. The piece of property in controversy is one of the pieces." The property was purchased from Frey & Schlund. The defendant in error testified that he purchased the property of Frey, in his office at 9233 Commercial avenue.

Liebner could speak the Polish language, and he was employed by Frey & Schlund to assist them and act as their agent in the transaction of business. Upon this point Schlund himself testified: "I am engaged in the real estate and insurance business with Mr. Frey, under the firm name of Frey & Schlund, at 9233 Commercial avenue, South Chicago, and have been for six years. I became acquainted with Liebner in 1890. He commenced work for us in February, 1890, and continued for about eleven months. During that time he sold property for us and acted as our agent in the transaction. He talked Polish, and we had purchased several subdivisions in South Chicago and had some property of our own, and he sold or assisted in selling the property. He was on a salary from February, 1890, to March, 1891. Then he worked upon a commission, and solicited insurance and

in the sale of property until between the 1st and 10th of September, 1891."

S. Rozok, a neighbor of defendant in error, testified that in 1890 he paid $70 to Liebner on a lot and afterwards got his deed in Frey's office, and that Liebner acted as interpreter in talking to Frey. Another witness testified that he made a contract with Liebner and paid him $50 in May, 1890, and afterwards paid him $50 more upon Frey's request. Another witness testified that Liebner worked for Frey & Schlund; that he bought a lot from Liebner and paid him $200 in the office of Frey & Schlund, and took a receipt signed by Liebner; that afterward he paid the balance to Frey & Schlund and obtained a deed from them. The payment of this money was on September 23, 1891.

The record contains other evidence tending to prove that Liebner was the agent of Frey & Schlund, and empowered to collect money due parties for whom they were transacting business of the character in question. It is true, the record fails to show that Frey & Schlund sent Liebner to the defendant in error with instructions to collect the money due of him. But that was not required. Liebner was held out to the public by Frey & Schlund as their agent by a course of dealing adopted with their customers, so that the people with whom they dealt, including the defendant in error, were led to believe that he was clothed with authority to collect and receive money due on contracts for the sale of real estate which had been sold by them as agents, and such persons were justified in acting on such belief until they were notified that Liebner was no longer such agent.

But it is said in the argument that Liebner was discharged as agent before he collected the money. There is some evidence in the record that Frey & Schlund discharged him between the 1st and 10th of September, 1891, but as late as September 23, 1891, he collected money for them, and his authority to do so was never called in

question. Moreover, if they had terminated the agency it was their duty to give these Polish people, with whom he had been dealing and doing business as agent, notice that the agency was terminated. But this was not done or attempted to be done until October 26, 1891, after the money in question had been paid, when a notice was published in a newspaper.

Mechem on Agency, (sec. 224,) in speaking on this subject, says: "Where a general authority is once shown to have existed it may be presumed to continue until it is shown to have been revoked, and persons who have dealt with the agent as such, or who have had notice of his authority, may very properly expect that if the authority be withdrawn they will be given reasonable and timely notice of that fact, and that they may therefore lawfully presume, in the absence of such notice, that the authority still continues. And it is therefore the general rule of the law, that the acts of a former general agent, within the scope of his original authority, will, notwithstanding its revocation, continue to bind the former principal to those parties who have been and still are dealing with him in good faith and reliance upon his former authority, until they have had notice of its revocation. But this rule has no application where the act done is beyond the scope of the agent's former authority, and particularly so where the act is in excess of the power which the agent himself claimed to possess."

After a careful consideration of all the evidence we think the decree of the circuit court was warranted by the testimony heard, and the decree will be affirmed.

*Decree affirmed.*